**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **RIGOBERTO RODRIGUEZ ARCE,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-616-KC** |
| | § | |
| **KRISTI NOEM et al.,** | § | |
| | § | |
| **Respondents.** | § | |

## <u>ORDER</u>

On this day, the Court considered Rigoberto Rodriguez Arce's Petition for a Writ of

Habeas Corpus, ECF No. 1.

## I.   BACKGROUND

### A.   Arrival in the United States & Immigration Proceedings

Rodriguez Arce is a Cuban citizen who has lived in the United States since about 2007.

*Id.* ¶ 2.  In 2019, an immigration judge ("IJ") ordered that Rodriguez Arce be removed.  *Id.* ¶ 3.

At that time, Rodriguez Arce could not be removed and was therefore released under an Order of

Supervision ("OSUP").  *Id.* ¶ 4.  On December 9, 2025, immigration officials detained

Rodriguez Arce again.  *Id.* ¶ 5.  Rodriguez Arce alleges that circumstances have not changed as

to warrant his re-detention.  *Id.* ¶ 9.  And that "ICE has communicated that Cuba will not accept

him"; "Mexico will not accept him"; "[n]o travel document exists"; "no repatriating agreement

exists"; and "[n]o removal date is pending.  *Id.* ¶ 35.

Rodriguez Arce is detained at the ERO El Paso Camp East Montana detention center in

El Paso, Texas.  *Id.* ¶ 10.  He argues that his detention is unlawful and asks the Court to order his

release.  *Id.* ¶¶ 24–44.

### B.    Procedural History

On March 4, 2026, Rodriguez Arce filed his Petition, asking the Court to order his immediate release.  *Id.* at 8.  The Court ordered Respondents to show cause why the Petition should not be granted.  Mar. 4, 2026, Order 2, ECF No. 2.  In answer to the Court's Show Cause Order, Respondents argued that Rodriguez Arce's removal is "significant[ly] likely in the reasonably foreseeable future."  Resp., ECF No. 6.  In terms of removal efforts, Enforcement and Removal Operations ("ERO") detained Rodriguez Arce on December 9, 2025, in Florida.  *See id.* Ex. A ("Marin Decl.") ¶ 11, ECF No. 6-1.  Then, on January 21, 2026, ERO "finalized a removal packet to Mexico."  *Id.* ¶ 12.  On January 25, Rodriguez Arce was transferred to ERO El Paso Camp East Montana "to effectuate his removal to Mexico."  *Id.*  Lastly, as of March 9, Rodriguez Arce has "refused removal to Mexico despite multiple attempts."  *Id.* ¶ 13.

The Court provided Respondents with just over a month to continue working towards Rodriguez Arce's removal and file a status report detailing (1) whether Cuba affirmatively rejected him for repatriation, (2) whether Rodriguez Arce may be lawfully removed to Mexico without his consent, (3) if he could not be removed to Mexico without his consent, then whether Respondents identified any other third countries for his removal, (4) the concrete steps taken to address any obstacles, and (4) the anticipated timeline for Rodriguez Arce's removal from the United States.  Mar. 20, 2026, Order 2, ECF No. 7.

Respondents have now filed that Status Report, ECF No. 8.  First, Respondents state that Cuba affirmatively rejected Rodriguez Arce for repatriation on January 8, 2026.  *See id.* Ex. A ("Vasquez Decl.") ¶ 5, ECF No. 8-1.  Next, Respondents contend that they are able to "remove [Rodriguez Arce] to Mexico without his consent" but that "as of February 19, 2026, the Government of Mexico advised they are no longer accepting failure-to-comply cases for

removal." *Id.* ¶¶ 6–7. This evidently means that they cannot remove Rodriguez Arce to Mexico without his consent. The Mexican government will not accept him otherwise. Respondents also state that they last attempted to remove Rodriguez Arce on March 9, presumably to Mexico, which did not accept him. Vasquez Decl. ¶ 8. He has now been transferred "to his originating AOR to continue removal efforts to another third country" and "[t]here is currently no expected removal date." *Id.* ¶¶ 9–10.

## II.    ANALYSIS

Rodriguez Arce seeks a writ of habeas corpus for his immediate release from custody, arguing that his continued detention violates the Due Process Clause of the Fifth Amendment. Pet. ¶ 24–44.

This Court has previously held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim. *See Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (citing *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025)). By virtue of the liberty interest obtained through their release, a § 1231(a) re-detainee can also bring a distinct procedural due process claim. *See id.* In *Nguyen*, this Court found a procedural due process violation where a Vietnamese national subject to a final order of removal, who had previously been deemed unremovable to Vietnam and released, was re-detained without an individualized assessment of his flight risk and dangerousness by an Immigration Judge ("IJ"). *See id.* at *5–8. The balance of the *Mathews v. Eldridge* factors weighed in favor of Nguyen because he had a strong liberty interest, the risk of erroneous deprivation was high and easily ameliorated through a bond hearing, there was little evidence that he was a flight risk or danger to the community, and the Government failed to demonstrate that his removal was significantly

3

likely in the reasonably foreseeable future. *See id.* Although the Government had submitted Nguyen's travel document request to Vietnam, it failed to provide an expected timeline for approval, did not attach copies of the submitted request, and the statistics it provided regarding successful removals of Vietnamese nationals did not identify whether any of these individuals, like Nguyen, were pre-1995 refugees. *See id.* at \*7. Thus, after approximately three and a half months in detention, this Court ordered Respondents to either provide Nguyen with a bond hearing or release him. *See id.* at \*1, 4, 8.

Here, Rodriguez Arce has been detained for about four months and Respondents have not identified a country that Rodriguez Arce can be removed to, since he cannot be removed to Cuba or Mexico. *See generally* Marin Decl.; Vasquez Decl.. And they provide no expected timeline for identifying a country for removal, nor any description of their efforts to do so. *See generally* Vasquez Decl. Whereas in Nguyen, Respondents at least offered statistics on removal and submitted a travel document request, here Respondents have done neither. Rodriguez Arce cannot be removed to Cuba, since the Cuban government has denied repatriation. Mexico is not a suitable third country because the Mexican government will no longer accept third country nationals who do not consent to go there. Respondents have identified no other country, and have no expected removal date. In short, Rodriguez Arce's removal was not possible in 2019, is not possible now, and "Respondents have not shown that his removal is significantly likely to occur in the reasonably foreseeable future." *See Nguyen*, 2025 WL 3120516, at \*7 (citations omitted).

Thus, at this time, Respondents' interest in effectuating Rodriguez Arce's removal order is weak. *See id.* at \*7–8. And any interest in preventing flight or danger is similarly weak, as Rodriguez Arce was previously released on an OSUP and there is no evidence in the record that

4

he presents a flight risk or committed any crimes or endangered anyone since his release. *See id.* at \*6. The Government's interest in re-detaining Rodriguez Arce is thus outweighed by his strong liberty interest from at least eight years of liberty in the United States, and the fact that the high risk of erroneous deprivation could be easily ameliorated by a bond hearing. *See id.* at \*5–6.

While there is no doubt that Rodriguez Arce is subject to a final order of removal and that Respondents are entitled to remove him from the United States, when they have essentially failed to take any action to effectuate that removal, they cannot continue to detain Rodriguez Arce without providing him with an individualized custody determination.

## III.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**.  The Court **ORDERS** that, <u>**on or before April 29, 2026**</u>, Respondents shall either: (1) provide Rodriguez Arce with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Rodriguez Arce's continued detention; or (2) release Rodriguez Arce from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, <u>**on or before April 29, 2026**</u>, Respondents shall **FILE** notice informing the Court whether Rodriguez Arce has been released from custody.  If Rodriguez Arce has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph.  Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**IT IS FURTHER ORDERED** that if Rodriguez Arce is released from custody,

Respondents shall **RETURN** all of his personal property in their custody to him upon release.

Such property includes, but is not limited to, identification documents.

**<u>There will be no extensions of the April 29, 2026, deadlines.</u>**

**SO ORDERED**.

**SIGNED this 22nd day of April, 2026.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE